IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENYA HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-836 |
| | ) | Chief Judge Mark R. Hornak |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| ATHENA MAVROIDES and TERRELL ROBERSON, | ) | Re: ECF No. 24 |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Plaintiff Kenya Harper brings this counseled civil rights action arising out of allegations that corrections officers at the Allegheny County Jail violated her Fourteenth Amendment rights based on deliberate indifference to a serious medical need. ECF No. 12.

Presently before the Court is a Motion to Dismiss filed by Defendants Athena Mavroides ("Mavroides") and Terrell Roberson ("Roberson") (collectively, "Defendants"). ECF No. 24. For the reasons below, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

### II.    REPORT

#### A.    FACTUAL AND PROCEDURAL BACKGROUND

##### 1.    Factual Allegations

Plaintiff's claims arise out of her pretrial detention at the Allegheny County Jail.[1] In the

---

[1] Plaintiff does not specifically plead whether she was detained as a pretrial detainee or convicted inmate. However, public court records show that she is still awaiting trial and has not been convicted of crimes for which she was detained. See Com. v. Harper, Docket Nos. MJ-05003-CR-0007115-2020 and CP-02-CR-0002240-2021, available at ujsportal.pacourts.us/CaseSearch (last visited May 24, 2023).

operative Amended Complaint, Plaintiff alleges that she was medically screened upon her arrival at Allegheny County Jail on November 20, 2020. ECF No. 12 ¶¶ 11-12. She told jail staff that she was pregnant, and that there was a potential for medical complications. Id. ¶¶ 12-14. Plaintiff was assigned to stay in the infirmary for three days. Id. ¶ 15.

On January 4, 2021, Plaintiff had a medical visit because the baby was not growing. Id. ¶ 16. A nurse took a sonogram and assured Plaintiff that she could hear the baby's heartbeat. Id. ¶ 17.

Four days later, however, Plaintiff received another sonogram at West Penn Hospital that showed she had suffered a miscarriage at 10 weeks, or around December 4, 2020. Id. ¶¶ 18-31. The doctor explained that not all miscarriages result in immediate discharge of the fetus, and that a procedure would need to be performed to remove the fetus from her body. Id. ¶ 32.

Plaintiff was discharged from the hospital without the procedure. Id. ¶ 33. She was returned to Allegheny County Jail, where correctional officers provided her with feminine hygiene products. Id. ¶¶ 34-35. Upon information and belief, Plaintiff claims this showed that jail officials expected her to discharge the fetal remains in jail. Id. ¶ 35.

On January 12, 2021, Plaintiff noticed she was bleeding. Id. ¶ 36. She rang the buzzer for help. Id. ¶ 37. Mavroides asked Plaintiff "what do you want me to do about it." Id. ¶ 38. Mavroides did not secure medical treatment for Plaintiff. Id.

Later that night, Plaintiff woke with terrible abdominal pain. Id. ¶ 38. After urinating, she noticed the sensation of fluid continuing to exit her body. Id. ¶¶ 40-41. Plaintiff turned on the light and saw blood everywhere. Id. ¶¶ 42-43.

Plaintiff again rang the buzzer for help. Id. ¶ 44. Roberson answered and asked what was wrong. Id. ¶ 45. Plaintiff said that she needed a nurse because she was having a miscarriage. Id. ¶¶ 46-48.

After telling her to "hang on," Roberson told Plaintiff the only way he could get her help was if she walked to the infirmary. Id. ¶¶ 49-50. Although Plaintiff explained that she did not think she could walk to the infirmary, Roberson responded "that's the only way." Id. ¶¶ 51-52. Plaintiff "felt like she was dying" and bled profusely as she walked to a different floor to reach the infirmary. Id. ¶ 53.

At the infirmary, Plaintiff informed a nurse that she was experiencing severe pain that prevented her from sitting. Id. ¶ 54. By this point, blood had soaked through Plaintiff's uniform. Id. ¶ 55. The nurse told Plaintiff that she had to sit because of how much blood she was losing, and she was given absorptive pads on which to sit. Id. ¶¶ 56-57. The nurse did not summon further medical assistance. Id. ¶ 58.

Eventually, someone called for an ambulance. Id. ¶ 59. When the paramedics arrived, they asked why Plaintiff was not "given the procedure yet." Id. Plaintiff responded that she did not know, and she was taken to West Penn Hospital's Emergency Room for treatment. Id.

After she arrived in the Emergency Room, Plaintiff began to feel very hot and suddenly the fetus was largely discharged. Id. An internal sonogram showed that the fetus had not been fully discharged. Id. ¶ 63. Plaintiff requested to receive a procedure to complete the miscarriage, but the doctor gave her a medication instead and assured her that the "rest will come out by itself." Id. ¶¶ 64-65.

Before the miscarriage process completed, Plaintiff was taken back to Allegheny County Jail. Id. ¶ 67. Her miscarriage continued for approximately one week, during which she wore

3

diapers because of the heavy bleeding.  Id. ¶¶ 67-68.

Based on these allegations, Plaintiff brings a Fourteenth Amendment claim for deliberate indifference to a serious medical need against Defendants Mavroides and Roberson.

### 2. Relevant Procedural History

Plaintiff originally filed this action on June 7, 2022, against several medical providers, two unidentified correctional officers, and Allegheny County.  ECF No. 1.

Defendant Allegheny County moved to dismiss Plaintiff's claims.  ECF No. 7.  Plaintiff then filed the operative First Amended Complaint, in which she only brought a Fourteenth Amendment claim against two unidentified correctional officers, "C.O. FNU LNU 1" and "C.O. FNU LNU 2," at Allegheny County Jail.  ECF No. 12.  In light of the filing of the First Amended Complaint, the Court denied Allegheny County's initial Motion to Dismiss as moot.  ECF No. 13.

With leave of Court, Plaintiff conducted limited discovery to ascertain the names of the two correctional officers.  ECF Nos. 16 and 18.  After Plaintiff obtained this information, the Court granted Plaintiff's motion to amend the caption of the case to identify "C.O. FNU LNU 1" and "C.O. FNU LNU 2," as Roberson and Mavroides, respectively.  ECF Nos. 20 and 23.

### 3. Motion to Dismiss

Defendants filed the instant Motion to Dismiss and Brief in Support on January 23, 2023. ECF Nos. 24 and 25.  Plaintiff filed a Response in Opposition.  ECF No. 28.  The Motion to Dismiss is now ripe for consideration.

### B. LEGAL STANDARD

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the

plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

**C. DISCUSSION**

Defendants move to dismiss Plaintiff's Fourteenth Amendment claim for deliberate indifference to a serious medical need. In order to establish a violation of Plaintiff's constitutional right to adequate medical care, the evidence must show: (1) a serious medical need; and (2) acts or omissions by Defendants that indicate a deliberate indifference to that need. Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 582 (3d Cir. 2003).[2]

---

[2] As a pretrial detainee, Plaintiff's claims arise under the Due Process Clause of the Fourteenth Amendment. The United States Court of Appeals for the Third Circuit has held that a Fourteenth Amendment claim for inadequate

5

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).

Deliberate indifference requires a showing that the official "knows of and disregards an excessive risk to inmate health or safety." Natale, 318 F.3d at 582 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). In the medical context, "[d]eliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, . . . or 'persistent conduct in the face of resultant pain and risk of permanent injury.'" Josey v. Beard, No. 06-265, 2009 WL 1858250, at *6 (W.D. Pa. June 29, 2009) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (internal citations omitted)).

Against this backdrop, the Court addresses Plaintiff's claims separately as to each defendant.

1. **Defendant Mavroides**

    a. **Serious Medical Need**

In support of the Motion to Dismiss, Defendants argue that the commencement of an anticipated discharge of an unsuccessful pregnancy is not a "serious medical need." ECF No. 25 at 9. Defendants contend that Plaintiff and correctional staff were aware that she would naturally

---

medical care should be evaluated under the standard used to evaluate similar claims brought under the Eighth Amendment. Natale, 318 F.3d at 582.

6

expel the pregnancy upon her return to the jail, and she received feminine hygiene products for this purpose. Id. at 9-10.

In her response in opposition to the Motion to Dismiss, Plaintiff argues that she was suffering a serious medical need arising out of her high-risk pregnancy and subsequent complications, which became emergent when she began to bleed and suffer serious abdominal pain. Plaintiff argues those symptoms were obvious to a lay person and notes that her condition ultimately prompted jail staff to send her to a hospital for medical examination and treatment. ECF No. 28 at 3-4.

Upon review, Plaintiff sufficiently pleads facts showing that she had a serious medical need. The Court notes Plaintiff's allegations that a doctor informed her a procedure would be necessary in light of her miscarriage, and that she suffered significant pain and continued bleeding that ultimately required her to be taken to the hospital. Based on these allegations, Plaintiff sufficiently pleads that she had a serious medical need.

### b. Deliberate Indifference

In further support of the Motion to Dismiss, Defendants also argue that Mavroides was not deliberately indifferent to Plaintiff's serious medical need. Based on Plaintiff's allegations, Defendants contend that Mavroides could conceivably just have been asking what help was necessary. Even if her response was "insensitive or brusque," Defendants argue, Plaintiff does not plead that she identified a specific medical need or that she made any specific requests for medical treatment. ECF No. 25 at 10.

In response, Plaintiff argues that Mavroides showed deliberate indifference by responding to a request for help with inaction. As a result, Plaintiff contends that her ability to receive medical care was delayed, and she suffered severe pain and bleeding. ECF No. 28 at 6.

Upon review, Plaintiff does not sufficiently plead facts showing Mavroides' deliberate indifference to her serious medical need. The allegations as to Mavroides are bare bones at best. Plaintiff only alleges that she noticed blood, and then she "buzzed" for help. However, she includes no allegations that would arguably place Mavroides on notice of any serious medical need, such as whether she specifically informed Mavroides of her need for medical attention, her medical history, or of any symptoms she was experiencing. Accordingly, the Motion to Dismiss should be granted as to Plaintiff's claim against Mavroides.

That said, Plaintiff should be granted leave to amend as to this claim. "If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cnty of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Because Plaintiff could conceivably plead facts that cure these deficiencies, the Court should grant Plaintiff leave to amend her Complaint as appropriate.

2. **Defendant Roberson**

   a. **Serious Medical Need**

Defendants do not dispute that Plaintiff had a serious medical need when she interacted with Roberson. ECF No. 25 at 11. Accordingly, this element is satisfied.

   b. **Deliberate Indifference**

In support of the Motion to Dismiss, Defendants argue that Roberson was not deliberately indifferent to Plaintiff's serious medical need. Defendants argue that Plaintiff does not plead facts showing that Roberson, non-medical personnel, was subjectively aware that Plaintiff would be medically unable to walk to the infirmary, or that walking could, or did, cause any adverse outcome. ECF No. 25 at 12-13.

In response, Plaintiff refers the Court to allegations that she requested medical attention,

and that Roberson required her to walk to the infirmary even after Plaintiff informed him that she did not think she was able to. ECF No. 28 at 6-7. Further, Plaintiff alleges that blood was everywhere, and she told Roberson that she was having a miscarriage. ECF No. 12 ¶¶ 43-48. According to Plaintiff, this states a plausible claim that Roberson was deliberately indifferent because he intentionally refused to provide care or delayed her medical treatment, resulting in undue suffering. ECF No. 28 at 6-7.

Upon review, Plaintiff sufficiently pleads facts to establish that Roberson was deliberately indifferent to her serious medical need. Plaintiff allegedly informed Roberson that she was miscarrying and required medical attention, and that she did not believe she could make it to the infirmary without assistance. Despite this, Roberson refused to coordinate any assistance—requiring Plaintiff to walk through severe pain and bleeding to obtain any help. Based on this, Plaintiff plausibly alleges that Roberson knew of and disregarded an excessive risk to her health or safety. Accordingly, the Motion to Dismiss Plaintiff's Fourteenth Amendment claim against Roberson should be denied on this basis.

### 3. Qualified Immunity

In the alternative, Defendants contend that they have qualified immunity relative to Plaintiff's Fourteenth Amendment claims. ECF No. 25 at 13-14. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). There is a two-step inquiry into whether qualified immunity applies: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), *abrogated in part by* Pearson v. Callahan, 555 U.S. 223 (2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). It is intended to shield officers who make "reasonable but mistaken judgments about open legal questions" and "it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The ultimate question is whether the state of the law when the offense occurred gave Defendants "fair warning" that their acts were unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

Qualified immunity is an affirmative defense. Therefore, Rule 12(b)(6) dismissal based on qualified immunity is proper only if such immunity is "established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)).

In this case, Defendants argue they are entitled to qualified immunity for the same reasons that Plaintiff fails to state a claim. Defendants assert they were not "patently incompetent," and "there was no clear violation of constitutional law." ECF No. 25 at 14. However, for the reasons discussed, Plaintiff states a plausible claim for relief against Roberson. Accordingly, the Motion to Dismiss should be denied on qualified immunity grounds as to Plaintiff's claim against Roberson.

Because it is recommended that the Court grant the Motion to Dismiss as to Plaintiff's claim against Mavroides on other grounds, it is not necessary to consider whether Mavroides enjoys qualified immunity as to this claim.

### D. CONCLUSION

For the reasons discussed, it is respectfully recommended that the Court should grant in part and deny in part Defendants' Motion to Dismiss, ECF No. 24. The Court should grant the Motion to Dismiss as to Plaintiff's claim against Mavroides, and it should deny the Motion to Dismiss as to Plaintiff's claim against Roberson. Plaintiff should be granted leave to amend as to her claim against Mavroides.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: May 24, 2023

Respectfully submitted,

*Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:  Honorable Mark R. Hornak,
     United States District Judge

   All counsel of record via CM/ECF.